IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**MARTIN ROMAN, # M-19956,**

       **Plaintiff,**

  vs.                                      Case No. 18-cv-1288-DRH

**SHANE HILEMAN,**
**JEFFERY M. DENNISON,**
**L. WALKER,**
**BRETT NEIGHBORS,**
**MARK SCHUMAKE,**
**NATHAN HOWTON, and**
**RYAN BURNS,**

       **Defendants.**

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff, currently incarcerated at Shawnee Correctional Center ("Shawnee"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants have knowingly housed him in unsanitary and unhealthy living conditions at Shawnee, and have failed to mitigate those conditions. Along with the Complaint, Plaintiff has filed a motion seeking a temporary restraining order ("TRO") and preliminary injunction. (Doc. 5). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss

1

any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance*

*Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

### The Complaint

Plaintiff arrived at Shawnee in October 2017. (Doc. 1, p. 6). According to the Complaint, during his incarceration at Shawnee, Plaintiff has been assigned to cells with serious deficiencies and Defendants have failed to remedy these deficiencies. Plaintiff generally alleges that, since October 2017, he has been exposed to the following conditions:

> Plaintiff has been denied and exposed to dangerous substances such as a[s]bestos substances, black mold, contaminated water, and spoiled food, inadequate clothing at Shawnee C.C., span of a[n] 8 month period. Plaintiff has been housed in a mice, bat infested environment, a sealed shut cell window, clogged up rusted ventilation vents. Soiled, stained, urine mattresses, molded shower area, freezing, and severely hot cell, excessive heat, lo[o]se floor tiles, peeled off lead paint, bed with springs missing, which caused plaintiff to have back issues. Plaintiff has been exposed to TB, and tested positive since his stay in this unsanitary environment. Also no hot water, unoperational sinks in the dayroom, dirty, molded, shower curtains, rusted shower vents, leaking ceiling, no emergency buttons in the cell.

(Doc. 1, p. 6). Plaintiff goes on to describe his exposure to the above conditions in more detail. The following is a summary of the relevant allegations.

**Provision of Clothing and Bedding**

Shortly after arriving at Shawnee, officials sent Plaintiff to the clothing department. When Plaintiff arrived at the clothing department, Correctional Officer Hileman and his inmate assistant issued Plaintiff's clothing and bedding

material. (Doc. 1, p. 8). The clothing was soiled, ripped, and not suitable for cold weather. (Doc. 1, pp. 8-9). The mattress was soiled with rust, urine, and fecal matter, and Plaintiff did not receive a mattress cover to protect him from the contaminants on the soiled mattress. (Doc. 1, pp. 8-9). The sheets and blanket Plaintiff received were soiled and torn. *Id.* Hileman disregarded Plaintiff's complaints and told him he would not be eligible for new sheets for two years. *Id.* He also indicated that the issued clothing was the only clothing Plaintiff would ever receive while incarcerated at Shawnee, so he better take care of it. (Doc. 1, pp. 8-10).

**Receiving Cell**

When Plaintiff first arrived at Shawnee, he was assigned to a cell in receiving. (Doc. 1, pp. 7, 11). The cell had a broken window that could not be closed. *Id.* As a result, Plaintiff endured extremely cold temperatures and strong winds for 14 days. *Id.* During this time, Plaintiff only had a jumpsuit and could not stay warm. *Id.*

Plaintiff was given a mattress, two sheets, and a blanket. *Id.* All of the items were unsanitary. The sheets and mattress were soiled with urine and fecal matter. *Id.* The sheets were torn and the blanket had a large hole. *Id.* Plaintiff speculates that he was exposed to scabies, bedbugs, MRSA, and/or other diseases. *Id.* Plaintiff also contends that the flooring was loose, exposing him to friable asbestos, the paint was peeling off of the walls, and the ventilation was clogged and rusted. *Id.* Additionally, the light fixture cover was broken, with dangling

4

pieces of rusty metal that could be made into a weapon. *Id.*

Plaintiff complained to an unidentified correctional officer about his mattress and asked for a mattress cover. *Id.* The correctional officer laughed and said, "This is Shawnee, we don't provide mattress covers, and you have not seen nothing yet." *Id.*

**Subsequent Cell Assignment**

On October 20, 2017, Plaintiff was transferred to the general population and assigned to cell 2-D-73. (Doc. 1, p. 12). As of the filing of this action, Plaintiff was still housed in cell 2-D-73. (Doc. 1, p. 12).

According to the Complaint, the ventilation in Plaintiff's cell is clogged with rust and dust, preventing fresh air from entering the room. (Doc. 1, p. 13). Mice enter Plaintiff's cell under the cell door. *Id.* The mice have eaten through Plaintiff's property and commissary items, and Plaintiff's cell contains mice feces. *Id.* Plaintiff claims that officials know Shawnee has a mouse infestation, but only treat the outside of the cell house for vermin. *Id.*

Initially, the window in Plaintiff's cell was broken and could not be closed, exposing Plaintiff to extreme temperatures and vermin. (Doc. 1, p. 12). In November 2017, Defendants Warden Dennison, Assistant Warden Walker, Chief Engineer Neighbors, and Assistant Chief Engineer Schumake ordered employees to screw all broken windows in the institution shut. (Doc. 1, pp. 12-14). The windows, including the window in Plaintiff's cell, were covered with thick plastic sheeting and sealed with duct tape. (Doc. 1, p. 14). Pursuant to Shawnee policy,

the windows remain sealed for six months (from approximately October through April), hindering air circulation and eliminating fresh air. (Doc. 1, pp. 12-14). Air circulation is also hindered by the dirt and rust that covers the screen on Plaintiff's cell door. (Doc. 1, p. 15). Plaintiff "has breathing issues and it has been difficult [for him] to breath based on poor air and ventilation throughout the cellhouse." (Doc. 1, p. 13). Plaintiff claims that Defendants Dennison, Walker, Neighbors, and Schumake are aware of the poor air circulation in Plaintiff's cell, have not taken any steps to remedy the problems, and have disregarded Plaintiff's health and safety. (Doc. 1, p. 15).

In approximately April 2017, Plaintiff's window was unsealed. (Doc. 1, pp. 14-16). The window can now be opened and closed, but there are large holes in the window screen. (Doc. 1, p. 16). As a result, when the window is open, vermin (spiders, bats, gnats, bees, and ants) come through the window into Plaintiff's cell. Therefore, Plaintiff, who has sinus problems, can only get fresh air by opening the window and allowing vermin to enter his cell. *Id.*

For the last two weeks, the sink in Plaintiff's cell has been clogged and is emitting a foul sewage smell. (Doc. 1, p. 13). The running water in Plaintiff's cell is cold, has a foul odor, and is rust colored. *Id.* Plaintiff has no access to hot water. *Id.* Plaintiff complained to an unidentified correctional officer about his sink, but it has not been fixed.

Plaintiff's toilet has been clogged several times. (Doc. 1, p. 13). It took Defendants Howton and Burns (described as being plumbers at Shawnee) five

days to fix the toilet. *Id.* The sink in Plaintiff's cell has been clogged for two weeks and smells foul. *Id.* Plaintiff complained to an unidentified correctional officer about his sink and the correctional officer indicated he would submit a maintenance request on Plaintiff's behalf. As of the filing of the Complaint, Plaintiff's sink had not been fixed. *Id.*

Plaintiff is presently sleeping on a thin mattress soiled with urine. *Id.* Plaintiff does not have a mattress cover or a pillow. *Id.* The mattress also has a large hole and is missing springs. (Doc. 1, p. 16). Plaintiff claims that Defendants are aware of these conditions but have done nothing to remedy the situation. (Doc. 1, p. 16).

The paint in Plaintiff's cell is peeling, possibly exposing Plaintiff to lead. (Doc. 1, pp. 14-15). Plaintiff also alleges that the cells at Shawnee, including his cell, have loose floor tiles, mold, vermin, and "other fatal substances." (Doc. 1, p. 15). According to the Complaint, these conditions are common throughout the prison and correctional officers have complained about the conditions for years, to no avail. *Id.*

Shawnee's cell doors can be "popped open" by inmates from outside the cells, placing inmates in danger. (Doc. 1, p. 14). Additionally, the internal cell buttons often do not work, meaning inmates are often unable to open their cells to attend meals and recreational activities. *Id.* Plaintiff believes this poses a fire hazard. *Id.*

The showers are moldy and dirty. (Doc. 1, p. 17). The ventilation in the

7

showers is clogged with dirt and rust. *Id.* Instead of cleaning the vents, Defendants placed a heavy steel plate over each vent. *Id.* This blocks all air flow and causes moisture to build up, worsening the mold infestation. *Id.* The shower drains are rusted, moldy, and clogged, causing the showers to back up with sewage. *Id.*

Similar ventilation and sanitation problems are present in the dayroom bathrooms. (Doc. 1, p. 18). Defendants Howton and Burns have turned off the water for the dayroom sinks and hand sanitizer dispensers are not filled. *Id.* Accordingly, inmates cannot clean their hands after using the toilet. Those inmates then go on to use the telephones, kiosk machines, and doorknobs in the dayroom, spreading germs. *Id.* This is particularly problematic because, during dayroom hours, cells are locked and the only available sinks are the sinks in the dayroom. *Id.*

Plaintiff claims that the unsanitary conditions at Shawnee have caused outbreaks of MRSA, staph, scabies, bedbugs, and a flesh eating bacterial skin infection. (Doc. 1, pp. 17-18). According to the Complaint, Defendants are aware of these issues, but have done nothing to address the problems. *Id.* Further, Plaintiff claims that the unsanitary conditions in his "assigned wing" are "happening in all cellhouses, and all wings." (Doc. 1, pp. 17-18).

The laundry room where Plaintiff must take his soiled clothes and linens twice a week is constantly flooded with sewage water due to backed up plumbing. (Doc. 1, p. 20). Food is undercooked and contaminated. (Doc. 1, pp. 20-21).

Defendants Dennison and Walker visit the food service area weekly and are aware of the unsanitary conditions. (Doc. 1, pp. 22-23).

Plaintiff claims he has submitted letters and grievances pertaining to the complained of conditions. (Doc. 5, p. 2). According to the Plaintiff, he submitted one emergency grievance, which Warden Dennison denied as a non-emergency. Plaintiff claims his other grievances have been ignored. *Id.* Plaintiff has also attached several grievances to the Complaint pertaining to his conditions of confinement. (Doc. 1, pp. 25-29). These grievances are stamped "received" by "Shawnee C.C. Warden's Office." *Id.*

Plaintiff seeks compensatory and punitive damages, and injunctive relief in the form of an order to immediately repair the dangerous conditions at Shawnee, and to transfer Plaintiff to a prison of his choice. (Doc. 1, p. 22).

### **Merits Review Pursuant to 28 U.S.C. § 1915A**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Eighth Amendment deliberate indifference claim against Dennison and Walker for allowing Plaintiff to be housed in unsanitary and hazardous conditions at Shawnee since October 2017.

9

**Count 2:** Eighth Amendment deliberate indifference claim against Dennison, Walker, Neighbors, and Schumake for implementing a policy sealing all inoperable windows, including the window in Plaintiff's cell, between November 2017 and April 2018.

**Count 3:** Eighth Amendment deliberate indifference claim against Hileman for providing Plaintiff with unsanitary clothing and bedding materials that were also unsuitable for cold weather and disregarding Plaintiff's complaints about the same.

**Count 4:** Eighth Amendment deliberate indifference claim against Howton and Burns for taking too long to repair and/or failing to repair plumbing issues in Plaintiff's cell.

**Count 5:** Eighth Amendment deliberate indifference claim against Howton and Burns for shutting off the water in the dayroom and failing to keep hand sanitizing dispensers in the dayroom filled, preventing inmates from properly sanitizing their hands after using the toilet.

## Applicable Standard

The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment. *Rhodes*, 452 U.S. at 346; s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992).

Claims under the Eight Amendment have both an objective and subjective component. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v.*

*Seiter*, 501 U.S. 294, 302 (1991). The objective conditions must have resulted in an unquestioned and serious deprivation of basic human needs or deprived the inmate of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987).

The subjective component of unconstitutional punishment focuses on the state of mind of the defendant. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992); *Wilson*, 501 U.S. at 298; *see also McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994). In conditions of confinement cases, this is deliberate indifference to inmate health or safety. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994). The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions. *Farmer*, 511 U.S. at 842. A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer harm. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). It is well-settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

## Discussion

### *Count 1*

Plaintiff alleges that, since October 2017, the unsanitary conditions at

Shawnee have exposed him to human waste and its odors; subjected him to physical ailments because of the poor ventilation, vermin infestation, filth, and unsanitary dietary conditions; and exposed him to communicable diseases, asbestos, and lead. He also alleges that he has been exposed to extremely hot and extremely cold temperatures, without weather appropriate clothing. "[C]onditions of confinement, even if not individually serious enough to work constitutional violations, may violate the Constitution in combination when they have a 'mutually enforcing effect that produces the deprivation of a single, identifiable human need.'" *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (citing *Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006); *Murphy v. Walker*, 51 F.3d 714, 721 (7th Cir. 1995)). Furthermore, the "exposure to psychological harm or a heightened risk of future injury from living in an infested jail is itself actionable." *See Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013) (citing *Thomas v. Illinois*, 697 F.3d 612, 615-17 (7th Cir. 2012) (admonishing district judges to treat psychological and probabilistic harm from unsanitary and infested prisons as seriously as realized physical harm). Finally, a prisoner's right to adequate and healthy ventilation has been recognized as necessary to meet constitutional requirements. *See Board v. Farnham*, 394 F.3d 469, 486-87 (7th Cir. 2005) (collecting cases).

Plaintiff has sufficiently alleged facts that satisfy the objective component of an Eighth Amendment claim. Plaintiff also alleges that Warden Dennison and Assistant Warden Walker failed to take action to remedy these conditions despite

having knowledge of the same (either through grievances, complaints, personal observation, and/or because many of the complained of conditions are allegedly systemic). These allegations are sufficient, at this early stage, to allow **Count 1** to proceed against Dennison and Walker. *See,* e.g., *Perez v. Fenoglio,* 792 F.3d 768 (7th Cir. 2015); *Antonelli v. Sheahan,* 81 F.3d 1422, 1428–29 (7th Cir. 1996).

*Count 2*

Plaintiff alleges that Warden Dennison, Assistant Warden Walker, Chief Engineer Neighbors, and Assistant Chief Engineer Schumake implemented a policy requiring maintenance employees to seal all inoperable windows shut, including the window in Plaintiff's cell, from approximately October through April every year. (Doc. 1, pp. 12-13). According to the Complaint, this exacerbated problems that already existed with regard to poor air circulation and ventilation in Plaintiff's cell. *Id.* Plaintiff further alleges that Defendants Dennison, Walker, Neighbors, and Schumake are aware of the poor air circulation in his cell, have not taken any steps to remedy the problems, and have disregarded Plaintiff's health and safety as it relates these issues. (Doc. 1, p. 15).

Considering authority already discussed, these allegations are sufficient to state a plausible Eighth Amendment claim. Accordingly, **Count 2** shall proceed as to Dennison, Walker, Neighbors, and Schumake.

*Count 3*

According to Plaintiff, shortly after arrival, Correctional Officer Hileman provided Plaintiff with clothing and bedding materials. (Doc. 1, pp. 7-8). Plaintiff

13

claims that the clothing was torn, dirty, and not suitable for cold weather. *Id.* He also claims that he was given (1) a mattress that was soiled with fecal matter, urine, dirt, and rust and (2) a blanket and sheets that were dirty, torn, and soiled with urine. *Id.* Plaintiff complained to Hileman, but his complaints were disregarded. These allegations are sufficient, at this early stage, to allow **Count 3** to proceed against Hileman.

*Count 4*

Plaintiff claims that his "toilet has been stopped up several times" and that his sink has been clogged, emitting a foul odor for approximately two weeks. (Doc. 1, p. 13). According to the Complaint, Defendants Howton and Burns, both plumbers at Shawnee, took five days to repair Plaintiff's toilet and the sink is still not repaired. Under certain circumstances, plumbing problems in a prisoner's cell could implicate the Eighth Amendment. However, in the instant case, the minimal allegations pertaining to a clogged toilet and sink fall short of stating an actionable deprivation.[1] *See* e.g., *Rodes v. Chapman,* 452 U.S. 337, 347 (1981) (deprivations must be "unquestioned and serious" and contrary to "the minimal civilized measure of life's necessities."); *Caldwell v. Miller*, 790 F.2d 589, 600-01 (7th Cir. 1986) (mere discomfort and inconvenience do not implicate the Constitution). As such, **Count 4** shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

---

[1] The severity of the problems with the toilet being "stopped up several time" and as to the clogged sink are unclear.

*Count 5*

Plaintiff alleges that, while in the dayroom, prisoners are unable to sanitize their hands after using the toilet because the dayroom sinks are not usable and because hand sanitizing stations are not properly maintained. According to the Complaint, Defendants Howton and Burns are responsible for the complained of conditions. Although the conditions described by Plaintiff are far from ideal, as pled, they do not amount to an "unquestionable and serious" deprivation. As such, **Count 5** shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

## Pending Motions

Plaintiff's motion for leave to proceed *in forma pauperis* ("IFP") (Doc. 2) shall be addressed in a separate order.

Plaintiff has filed a motion requesting a TRO and preliminary injunction (Doc. 5). Insofar as this motion seeks a temporary restraining order (TRO), it is **DENIED IN PART**. However, that portion of the motion which seeks a preliminary injunction (Doc. 5) is **REFERRED** to a United States Magistrate Judge for further consideration.

A TRO is an order issued without notice to the party to be enjoined that may last no more than fourteen days. A TRO may issue without notice:

> only if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b). In the prison context, the orders are typically employed "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

Without expressing any opinion on the ultimate merits of any of Plaintiff's other claims for relief, the Court concludes that a TRO should not issue in this matter. Plaintiff's allegations do not set forth specific facts demonstrating the likelihood of immediate and irreparable harm *before Defendants can be heard*. Additionally, if the Court determines that Plaintiff is entitled to injunctive relief, the input of all parties concerned will greatly assist in fashioning a remedy that is narrowly tailored to mitigate future harm to Plaintiff.

As noted above, the Court's threshold review dictates that Plaintiff's request for preliminary injunctive relief deserves prompt consideration. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c), Plaintiff's motion for a preliminary injunction (Doc. 5) is hereby **REFERRED** to a United States Magistrate Judge, who shall resolve the request as soon as practicable and issue a Report and Recommendation.

The Motion for Recruitment of Counsel (Doc. 3) Motion to Request Inspection (Doc. 4) are also referred to a United States Magistrate Judge for further consideration. The Court finds that this case presents such complicated issues as to necessitate an experienced litigator to pursue the claims involved. Therefore, the Magistrate Judge is directed to examine closely whether the Plaintiff is sufficiently experienced in pursuing pro se litigation to represent

himself in a complicated and significant piece of litigation such as this.  Should the Magistrate Judge determine that Plaintiff is entitled to counsel, the judge is directed to consider experienced prisoner rights litigators such as Alan Mills or someone or organization that has considerable experience in representing prisoners.  The Magistrate Judge is further directed that any efforts to move, oral or written, to settle this case are hereby unreferred to the Magistrate Judge and must be heard by the undersigned.

### Injunctive Relief

With respect to Plaintiff's request for injunctive relief, the warden is the appropriate party.  *Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).  Accordingly, Warden Dennison is an appropriate official capacity party in the instant case.[2]  As to all other Defendants, to the extent that any claims have been allowed to proceed, they go forward against these Defendants in their individual capacities only.

### Disposition

**COUNTS 4** and **5** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.  Defendants **HOWTON** and **BURNS** are **DISMISSED** from the Complaint without prejudice.  The Clerk of the Court is **DIRECTED** to terminate them as parties in CM/ECF.

**COUNT 1** shall proceed against **DENNISON** and **WALKER**.

---

[2] This is in addition to the individual capacity claims that are proceeding as to Warden Dennison.

**COUNT 2** shall proceed against **DENNISON, WALKER, NEIGHBORS,** and **SCHUMAKE.**

**COUNT 3** shall proceed against **HILEMAN**.

The Motion for Preliminary Injunction (Doc. 5) is **REFERRED** to a United States Magistrate Judge, who shall resolve the request for injunctive relief as soon as practicable and issue a Report and Recommendation. Further, Plaintiff's Motion for Recruitment of Counsel (Doc. 3) and Motion to Request Inspection (Doc. 4) are **REFERRED** to a United States Magistrate Judge for disposition.

**IT IS FURTHER ORDERED** that the Clerk of Court shall take appropriate steps in coordination with the U.S. Marshals Service, to effect formal, **PERSONAL SERVICE** of summons, the Complaint, the motion for preliminary injunction (Doc. 5), and this order upon each Defendant at his or her work address, as provided by Plaintiff. The Court will not require Defendants to pay the full costs of formal service, as the Court is ordering personal service to expedite the resolution of Plaintiff's Motion for a Preliminary Injunction.

The United States Marshals Service is **APPOINTED** pursuant to Federal Rule of Civil Procedure 4(e) to effect service. The Clerk is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **DENNISON**, **HILEMAN, WALKER, NEIGHBORS,** and **SCHUMAKE.** The Clerk shall issue the completed summons, and prepare a service packet for each Defendant consisting of: the completed summons, the completed form USM-285, a copy of the complaint (Doc. 1), the Motion for Preliminary Injunction (Doc.

5), and this Memorandum and Order. The Clerk shall deliver the service packets for each Defendant to the United States Marshals Service for personal service on each Defendant.

Pursuant to Federal Rule of Civil Procedure 4, **within 14 days of the date of this Order**, the United States Marshals Service **SHALL PERSONALLY SERVE** upon Defendants **DENNISON**, **HILEMAN, WALKER, NEIGHBORS,** and **SCHUMAKE,** the service packets containing the summons, form USM-285, a copy of the Complaint (Doc. 1), the Motion for Preliminary Injunction (Doc. 5), and this Memorandum and Order. **LEAVING THE SUMMONS WITH THE PRISON'S LITIGATION COORDINATOR IS NOT SUFFICIENT – each Defendant must be personally served**. All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In order to assist the Court in its resolution of the motion for preliminary injunctive relief (Doc. 5), Defendants **DENNISON**, **HILEMAN, WALKER, NEIGHBORS,** and **SCHUMAKE SHALL FILE A RESPONSE** to the motion within 14 days of the date of service of the summons.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a **United States Magistrate Judge** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Judge Herndon
2018.06.19
20:51:31 -05'00'

United States District Judge