IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARTIN ROMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| SHANE HILEMAN, | ) |
| JEFFERY M. DENNISON, | ) |
| LU WALKER, | )   Case No. 18-cv-1288-DWD |
| BRETT NEIGHBORS, and | ) |
| MARK SCHUMAKE,[1] | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

On June 18, 2018, Plaintiff Martin Roman, an inmate in the custody of the Illinois Department of Corrections, filed suit alleging that Defendants Shane Hileman, Jeffery Dennison, Lu Walker, Brett Neighbors, and Mark Schumake housed him in unsanitary and unhealthy living conditions at Shawnee Correctional Center in violation of the Eighth Amendment. Now before the Court is Defendants' motion for summary judgment (Doc. 70) on the merits of Roman's claims. Roman filed a *pro se* response (Doc. 89) on November 6, 2020. For the reasons delineated below, Defendants' motion is granted in part.

FACTUAL BACKGROUND

Plaintiff Martin Roman arrived at Shawnee Correctional Center ("Shawnee") in September 2017, and he alleges that he has been housed in unsanitary and hazardous

---

[1] The Clerk of Court shall correct the name of Defendant L. Walker to Lu Walker on the docket sheet.

conditions since his arrival. At all times relevant to Roman's complaint, Defendant Jeffrey Dennison was the warden at Shawnee and Defendant Lu Walker was the assistant warden. Defendant Brett Neighbors was the chief engineer, and Defendant Mark Schumake was an assistant chief engineer. Defendant Shane Hileman was a correctional officer who was responsible for providing Roman with clothing and bedding upon his arrival at the facility.

Roman was held in a cell in receiving at Shawnee for approximately two weeks beginning in mid-September 2017. At his deposition, Roman testified that the window in his cell was broken, and, as a result, he was subjected to unconstitutionally cold temperatures while he was held in receiving. (Doc. 71-2, p. 8). Historical weather data submitted by Defendants disputes Roman's claims, showing that high temperatures ranged from 77 to 91 degrees and that lows only dipped below 60 degrees on four nights during the weeks Roman was in a receiving cell. (Doc. 71-3). Roman told a correctional officer about the issues with his window, but he did not tell anyone else. (Doc. 71-2, p. 9).

Defendant Hileman provided Roman with clothing and bedding for use at Shawnee. Roman was provided with three new pairs of socks and three new pairs of underwear. He was also given two sets of "state blues," which consisted of a blue shirt and blue pair of pants, and towels, a washcloth, and a bedding roll. Roman was supposed to receive a bedroll of two sheets and a blanket, but he testified that one of his sheets was torn in half and that his blanket was ripped. (*Id.* at 10). His state blues were torn with holes that Roman described as big enough to stick his fingers through. Roman asked Hileman for "something good and something reasonable," but Hileman told him that

there no exchanges. (*Id.* at 5). According to interrogatory answers produced by Defendant Dennison, however, Shawnee tried to create opportunities for clothing exchanges for all inmates every six months, and there was a repair shop in the facility that could make sewing repairs for inmates who requested them. (Doc. 71-5).

When Roman was transferred from receiving to his first cell at Shawnee, he was given a mattress that had rust and urine stains on it, and he testified that he did not believe mattresses were cleaned or sanitized between uses, though he never worked on any sanitation or laundry crews responsible for such tasks. (Doc. 71-2, p. 6-7). Roman's second cell had a window that was sealed shut and covered with plastic, which he said made his cell unbearably hot with no air circulation, though he did acknowledge that he had a fan in his cell. (*Id.* at 15). Windows at Shawnee are sealed and covered with plastic between November and March to keep out cold winter air, and windows in the cell block are being replaced in phases as money becomes available for the project. (Doc. 71-5).

Roman also testified about having to deal with dirty, rusted air vents in his cell and a screen over the window in his cell that was too dirty to allow proper air flow. (Doc. 71-2, p. 15). According to Defendant Dennison, inmates have access to cleaning supplies on a daily basis and are responsible for cleaning their own cells. (Doc. 71-5). Roman also complains that he has been subjected to mouse and spider infestations throughout the institution, including seeing mice on a daily basis and finding mouse feces in his clothing. He has never been bitten by a spider. (Doc. 71-2, p. 18-19). Pest control services treat Shawnee on a monthly basis to prevent and address any infestations. (Doc. 71-5). Roman also believes that there is lead paint and asbestos throughout the facility, but he

acknowledged that his beliefs are based upon how old the paint and other materials appear. (Doc. 71-2, p. 20-21). Shawnee was built in the 1980s and does not have lead paint. It has also been inspected for asbestos, and there is no asbestos in the prison. (Doc. 71-5).

According to Roman, he is forced to shower in moldy showers. He believes there is mold because the showers appear to have black-colored mold on the floors and other surfaces. (Doc. 71-2, p. 22-23). Defendants contend that the black discoloration is a result of the type of cleaning products used and that it is not mold. The showers are cleaned each morning before inmates use them, and they are undergoing renovations to address the discoloration issues. (Doc. 71-5). Roman also claims that the prison is unsanitary because there have been three sewage backups that caused flooding in the kitchen and sometimes trays are not fully cleaned between uses. (Doc. 71-2, p. 24).

At his deposition, Roman acknowledged that he never spoke with Defendants Dennison, Walker, Schumake, or Neighbors about his complaints and that he has no evidence that they were aware of the conditions he faced other than their general responsibility for knowing what was happening at Shawnee and for making needed repairs. (Doc. 71-2, p. 22, 25). Roman alleges that Defendants Dennison and Walker were deliberately indifferent to his health and safety needs because they allowed Roman to be housed in unsanitary and hazardous conditions (Count 1). He also alleges that Defendants Dennison, Walker, Neighbors, and Schumake implemented a policy of sealing all inoperable windows, including the window in Roman's cell, which contributed to the intolerable living conditions (Count 2). Roman claims that Defendant

Hileman demonstrated deliberate indifference by providing him with unsanitary clothing and bedding that were unsuitable for cold weather (Count 3).

## LEGAL STANDARDS

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See Archdiocese of Milwaukee v. Doe,* 743 F.3d 1101, 1105 (7th Cir. 2014)(citing FED. R. CIV. PROC. 56(a)). *Accord Anderson v. Donahoe,* 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.,* 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.,* 756 F.3d 542, 544 (7th Cir. 2014).

The Eighth Amendment prohibition on cruel and unusual punishment forbids the unnecessary and wanton infliction of pain. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)(citation omitted). To succeed on a claim related to conditions of confinement, a

plaintiff must establish both an objective and subjective element. *See Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008). As to the objective element, a prisoner must establish that the conditions deny him "the minimal civilized measure of life's necessities," creating an excessive risk to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To do so, he must show that the conditions resulted in an unquestioned and serious deprivation of basic human needs such as food, medical care, sanitation, or physical safety. *See Rhodes*, 452 U.S. at 347. The Eighth Amendment "does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans." *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001). Rather, "extreme deprivations are required to make out a conditions-of-confinement claim." *Turner v. Miller*, 301 F.3d 599, 603 (7th Cir. 2002)(citations and quotations omitted).

The subjective component of a claim for unconstitutional conditions of confinement requires demonstrating that a defendant had a culpable state of mind by showing that a defendant acted with deliberate indifference to a substantial risk of serious harm to the prisoner. *See Farmer*, 511 U.S. at 837, 842. While mere negligence does not amount to a constitutional violation, a plaintiff satisfies the deliberate indifference standard by showing that a prison official acted, or failed to act, despite the official's knowledge of a substantial risk of serious harm from the alleged unconstitutional conditions. *See Farmer*, 511 U.S. at 842; *Davidson v. Cannon*, 474 U.S. 344, 347-348 (1986). That is, prison officials must act to prevent "unreasonable peril" or to address

"preventable, observed hazards that pose a significant risk of severe harm to inmates." *Anderson v. Morrison*, 835 F.3d 681, 683 (7th Cir. 2016).

## ANALYSIS

1. Count 1: Unconstitutional Conditions Claim Against Defendants Jeffery Dennison and Lu Walker

Roman wishes t holds Defendants Dennison and Walker accountable for what he describes as intolerable living conditions at Shawnee, but Defendants maintain that Roman's claims are either unsupported by evidence or related to trivial inconveniences. While there may be evidentiary issues as to individual portions of Roman's claims, when the record is viewed as a whole, there is sufficient evidence that could allow a reasonable juror to conclude that all of the alleged conditions, in combination, establish that Roman faces an excessive risk to his health and safety. While it seems unlikely that Roman is housed with lead and asbestos, there are genuine disputes of fact as to whether the combination of dirty food trays, sewage backups in dining areas, mouse and spider infestations, exposure to cold and to lack of ventilation, and, potentially, unremedied mold in the showers deprived Roman of the "minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834.

Roman testified that he never spoke with Defendant Dennison or Defendant Walker about his issues and that he believes they are responsible based upon their roles within the facility. The head of a facility, like Defendant Dennison, can be held accountable for systematic unsanitary conditions. *See Gray v. Hardy*, 826 F.3d 1000, 1008-09 (7th Cir. 2016)(citing *Sanders v. Sheahan*, 198 F.3d 626 629 (7th Cir. 1999)). Nothing

suggests that Defendant Walker bears that same responsibility. There is no evidence that Walker knew of a risk to Roman's health or safety and that she failed to act to remedy it.

Defendants suggest that the Court should rule in their favor because Roman's motion for preliminary injunction was denied after an evidentiary hearing focused on the conditions Roman faced at that moment in time at Shawnee. (Docs. 27, 36). In ruling on Roman's motion for emergency relief, the Court, in making findings of fact, noted that his likelihood of success on his claims of unconstitutional conditions was low, but the inquiry, and the Court's role in it, is different at summary judgment. Lack of sufficient cause for emergency relief in the past does not mandate that Defendants are entitled to judgment as a matter of law at present. The question is whether the record demonstrates there are genuine disputes of material fact that must be resolved by a trier of fact. As to Roman's claims against Dennison, the Court finds that there are. Accordingly, Defendant Walker's motion for summary judgment is granted as to Count 1, but Plaintiff's claim against Defendant Dennison shall proceed.

2. Count 2: Lack of Ventilation Claim Against Defendants Jeffery Dennison, Lu Walker, Brett Neighbors, and Mark Schumake

In Count 2, Roman claims that Defendants Dennison, Walker, Neighbors, and Schumake violated his constitutional rights by sealing his cell window, which resulted in a lack of adequate ventilation and air circulation. Extreme temperatures that are prolonged in duration and sufficiently severe can give rise to a constitutional claim, and prisoners are entitled to adequate ventilation. *See Sanders*, 198 F.3d at 628 (citing *Raine v. Williford*, 32 F.3d 1024, 1035 (7th Cir. 1994); *Gray*, 826 F.3d at 1006. Windows at Shawnee

are sealed from November until March to keep out the cold winter air. There is no evidence that the temperature in Roman's cells rose to an extreme temperature as a result of the sealed window, and Roman testified that he had a fan, creating a means of circulating air throughout his cell during winter months. Roman also had access to cleaning products and was responsible for cleaning the vents in his cell to the extent that they were too dirty to properly circulate air. Additionally, the door to his cell was not solid and had a window, albeit one covered with either a screen or a plate with holes. No reasonable juror could conclude that Roman was held in a cell that lacked appropriate ventilation or airflow. There is not a triable question of fact as to whether the sealing of windows in winter to prevent drafts and extreme cold posed an extreme deprivation, and Defendants are entitled to summary judgment on Count 2.

3. Count 3: Deliberate Indifference Claim Against Defendant Hileman

Roman's testimony suggests that Defendant Hileman gave him torn clothing and bedding that was covered in urine and rust stains and that Hileman refused to replace or exchange the items when Roman asked for "something good and something reasonable." (Doc. 71-2, p. 5). Defendants' interrogatory responses suggest that there were opportunities at Shawnee for Roman to exchange his clothing items or to request repairs if Roman believed his clothing was in an unreasonable condition. Defendants also maintain that dirty and torn items were not distributed to new inmates, contradicting Roman's claim that he was only given half of a sheet in receiving. The record reflects that Roman had access to laundry and repair services and was not forced to wear soiled clothing. Stains and tears in clothing and bedding do not to rise to the level of being an

extreme deprivation, particularly where opportunities to repair and launder items existed. Minor inconveniences and occasional lack of comforts while in confinement is to be expected and are not actionable. Additionally, outside of one conversation during the initial distribution of clothing, Hileman had no meaningful interaction with Roman, and there is insufficient evidence that he failed to act to remedy a serious risk to Roman's health and safety. As such, Defendant Hileman is entitled to summary judgment.

4. Qualified Immunity

Defendants argue that they are shielded from liability by the doctrine of qualified immunity. Qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The doctrine "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*. It protects an official from suit "when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

The qualified immunity test has two prongs: (1) whether the facts shown, taken in the light most favorable to the party asserting the injury, demonstrate that the officer's conduct violated a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *See Pearson*, 555 U.S. at 232. *See also Brosseau*, 543 U.S. at 197; *Wilson v. Layne*, 526 U.S. 603, 609 (1999). To be "'clearly

established' a right must be defined so clearly that every reasonable official would have understood that what he was doing violated that right." *Dibble v. Quinn*, 793 F.3d 803, 808 (7th Cir. 2015)(citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). There need not be a case directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The right must be established "not as a broad general proposition." *Reichle*, 566 U.S. at 664. Instead, it must be "particularized" such that the "contours" of it are clear to a reasonable official. *Id*. That is, "existing precedent must have placed the statutory or constitutional question beyond debate." *Carroll v. Carmen*, 135 S.Ct. 348, 350 (2014).

As the Court found that there was no constitutional violation by Defendants Hileman, Walker, Neighbors, and Schumake, they are entitled to qualified immunity. Likewise, Defendant Dennison is entitled to qualified immunity on Count 2. The Court did not find that there was no constitutional violation by Defendant Dennison in Count 1, and Defendants ask the Court to consider whether there was a clearly established right in play at the time of Roman's allegations. It is well-established, however, that a prisoner has a right to adequate heat, ventilation, sanitation, and clothing to protect him from the elements. As such, Defendant Dennison is not entitled to qualified immunity on Count 1.

## CONCLUSION

For the above-stated reasons, Defendants' motion for summary judgment (Doc. 70) is **GRANTED in part** and **DENIED in part**. Defendants' motion is granted on Plaintiff's claims against Defendant Walker in Count 1, against Defendants Dennison, Walker, Neighbors, and Schumake in Count 2, and against Defendant Hileman in Count

3. Defendants' motion is denied as to Defendant Dennison in Count 1. At the close of the case, the Clerk of Court shall enter judgment against Plaintiff Martin Roman and in favor of Defendant Lu Walker on Count 1 and in favor of Defendants Shane Hileman, Jeffery Dennison, Lu Walker, Brett Neighbors, and Mark Schumake on Counts 2 and 3. Only Count 1 against Defendant Dennison remains pending.

**SO ORDERED.**

Dated: November 30, 2020

_____
DAVID W. DUGAN
United States District Judge